## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEAN L. GILLENWATER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-cv-10338-DJC |
| THE HOME DEPOT INC., | ) |
| Defendant. | ) |

## <u>MEMORANDUM AND ORDER</u>

CASPER, J.                                          December 1, 2022

### I.      Introduction

Plaintiff Sean Gillenwater ("Gillenwater") has filed this lawsuit against Defendant The Home Depot Inc. ("Home Depot"), his former employer, for allegedly discriminating against him on the basis of race and age in violation of Mass Gen. L. c. 151B, §§ 4(1), 4(1)(B) (Count I), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II) and in violation of the Age Discrimination in Employment Act ("ADEA") (Count III).  D. 19.  Home Depot now moves for summary judgment.  D. 55.  For the reasons stated below, the Court ALLOWS the motion.

### II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago-Ramos v. Centennial P.R. Wireless Corp.,

217 F.3d 46, 52 (1st Cir. 2000) (citation omitted).  "A genuine issue exists where a reasonable jury could resolve the point in favor of the nonmoving party."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citation and internal quotation marks omitted).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest upon the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

### A.    Facts Deemed Admitted

The following facts are undisputed unless otherwise noted and are drawn from Home Depot's statement of undisputed material facts and accompanying documents, D. 57, 58, 66, Gillenwater's response and statement of additional material facts and accompanying documents, D. 60, 61, 63, 64.

Although Gillenwater filed a response to Home Depot's statement of facts, D. 60, 63 and a statement of additional material facts, D. 61, 64, he failed to comply with Fed. R. Civ. P. 56(c)(1) and Local Rule 56.1.  Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration . . . or other materials."  Local Rule 56.1 requires the party opposing summary judgment to "include a

concise statement of material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Gillenwater's response and statement of additional facts contain matters not material to the motion for summary judgment, lack citation to the record and/or offer no factual basis for a number of matters that he claims are disputed.  See, e.g., D. 61 ¶¶ 6-7, 15 (questioning Home Depot's conduct of discovery and disputing that this case is about his "past employment record"); D. 63 (disputing various undisputed facts presented by Home Depot, but not citing to any evidence in the record to support same).  Local Rule 56.1 also provides that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."  Local Rule 56.1; see Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (stating that "[b]ecause [the nonmoving party] did not controvert the statement of undisputed material facts that the defendants filed with their summary judgment motion, [the court] deem[ed] those facts admitted"); see also Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (stating that "pro se status does not insulate a party from complying with procedural and substantive law") (citation omitted).  Accordingly, Home Depot's statement of facts are deemed admitted and the Court relies upon same.

### B.    Gillenwater Begins Employment at Home Depot

 In 2004, Gillenwater was promoted to Assistant Store Manager ("ASM").  D. 57 ¶ 2; D. 58 at 10–11.  Gillenwater worked as an ASM at several Home Depot locations from August 2004 and through his time at Store 2671 in Avon, Massachusetts, which is the job site at issue in this suit.  D. 57 ¶¶ 2, 42; D. 58 at 12, 18.  The ASM position's job responsibilities included, among other things, ensuring excellent customer service for product sales, supervising store associates,

maintaining the department's "profitability through analysis, trend identification and responding to identified problems."  D. 57 ¶ 3; D. 58 at 59.  The ASM position was also responsible for developing and communicating store standards to associates and following standard operating procedures for openings, closings, signing for petty cash, markdowns, time slips, refunds and price changes.  D. 57 ¶ 3; D. 58 at 59.  As an ASM, Gillenwater reported directly to the Store Manager. D. 57 ¶ 3; D. 58 at 59.

### C.   Home Depot's Standards of Performance Policy

Home Depot's Standards of Performance Policy ("the Policy") establishes expectations for workplace conduct and overall job performance for all employees.  D. 57 ¶ 4; D. 58 at 61–73.  The Policy includes "seven values-based behaviors that employees are expected to demonstrate": "providing excellent customer service, creating shareholder value, building strong relationships with your team, showing respect for all people, demonstrating an entrepreneurial spirit, doing the right thing and taking care of team members."  D. 57 ¶ 7; D. 58 at 83.  The Policy also outlines Home Depot's progressive discipline for misconduct, which includes coaching, counseling, final warning and termination.  D. 57 ¶¶ 4–5; D. 58 at 62.  Managers, however, maintain authority to "skip steps" depending on the nature and severity of the misconduct.  D. 57 ¶ 4; D. 58 at 62. "Minor violations are those behaviors that although not permitted, are generally addressed through the progressive disciplinary process."  D. 58 at 62.  "Major violations are those behaviors that are so serious in nature that they typically warrant immediate termination upon the first offense; however, a final warning may be appropriate depending on the circumstances and behavior at issue."  Id.

Under the Policy, the coaching step is a documented verbal conversation in which the manager addressed the associate regarding a minor violation of the Policy.  D. 57 ¶ 5; D. 58 at 71.

4

The conversation is documented through Home Depot's performance tracking system, "Manager's Notes." D. 57 ¶ 5; D. 58 at 30, 76. The counseling step is a "formal documented notice to address an associate who: [d]emonstrates a subsequent minor violation of [the Policy] following a [c]oaching" or who "[d]emonstrates behavior or job performance that does not meet [Home Depot's] expectations or violates [Home Depot's] policy or procedure." D. 58 at 71. A final warning is "formal documented notice to an associate that one or more subsequent violations of the [Policy] will result in termination of employment." Id. This occurs when an associate "[d]emonstrates a major violation or serious departure from expectations on a single occurrence but does not warrant immediate termination due to the circumstances and the nature of the behavior at issue, [d]emonstrates a minor violation of [the Policy] following a [c]ounseling [or] [e]ngages in a pattern of conduct/behavior and/or job performance that repeatedly violates [Home Depot's] policies or is below acceptable standards; and/or has received multiple discipline notices." Id. Termination "generally occurs" either "[a]fter multiple notices have been delivered for violations of [the Policy]" or "[u]pon the first major violation or severe departure from a critical standard[s] due to the circumstances and the nature of the behavior at issue." Id.

### D.   Gillenwater's Employment at Store 2671

Gillenwater worked as an ASM at Home Depot store 2671 from July 14, 2014 until his termination on May 12, 2017. D. 57 ¶¶ 18, 42; D. 58 at 84. At this Home Depot location, Gillenwater asserts that he was unfairly targeted by his store manager, Paul D'Agostino ("D'Agostino"), human resources manager, Brenda Kearney ("Kearney"), district leader, Brian Dennison ("Dennison"), a fellow ASM, Tammy Shalkowski ("Shalkowski"), and regional vice president, Paul Deveno ("Deveno"), and eventually terminated on the basis of his age and race. See D. 19; D. 62.

Leading up to Gillenwater's May 2017 termination, he had a record of disciplinary action. At store 2671, Gillenwater's disciplinary history began in March 2015.  D. 57 ¶ 20; D. 58 at 101. On March 12, 2015, Robert Carter, Gillenwater's former manager, documented a coaching session for showing a lack of respect toward store associates.  D. 57 ¶ 20; D. 58 at 101.  In 2015, D'Agostino, Gillenwater's manager as of April 23, 2015, documented three coaching sessions and a progressive disciplinary notice.  D. 57 ¶¶ 21–25; D. 58 at 75, 103–06, 112–13.  In his June 30, 2015 session, D'Agostino informed Gillenwater that if he continued to fail to keep his department clean, further disciplinary action would follow.  D. 57 ¶ 22; D. 58 at 105–06.  In September 2015, in his mid-year manager review, Gillenwater received a "needs improvement" or "inconsistently demonstrates" in seven of the twelve review categories.  D. 57 ¶ 23; D. 58 at 108–10.  On December 2, 2015, Gillenwater signed a progressive disciplinary notice, which acknowledges that he must follow the company's return policy and that "[f]urther infractions [would] result in additional disciplinary action up to and including termination of employment."  D. 57 ¶ 24; D. 58 at 112.  In 2016, Home Depot continued to receive customer complaints regarding Gillenwater's customer service.  D. 57 ¶ 28; D. 58 at 77–78.

In 2017, Gillenwater's performance did not improve.  On January 17, 2017, Dennison documented that Gillenwater was not showing up to work on time or leaving at the appropriate time, that he was "overly defensive" to constructive criticism during a walk-through of his department, that he was inappropriately using his cellphone and that he fell asleep during a recap of his walk-through.  D. 57 ¶ 29; D. 58 at 130.  A department supervisor, Richard Kusick ("Kusick"), and Kearney also met with Dennison and complained that Gillenwater was speaking down to associates, creating a disrespectful work environment and that he would not respond to associate requests for assistance.  D. 57 ¶ 30; D. 58 at 132–133.  Dennison referred this complaint

to Home Depot's Associate Advice and Counsel Group ("AACG") for further investigation. AACG conducted interviews and confirmed Kusick and Kearney's concerns. D. 57 ¶ 31; D. 58 at 135–140. As a result of this investigation, on February 21, 2017, Gillenwater received another progressive disciplinary notice stating that he treated associates rudely and disrespectfully and that he "has no sense [of] urgency and is not helpful with customers and associates' needs." D. 57 ¶ 32; D. 58 at 142–43.

Following this progressive disciplinary notice, Gillenwater's performance did not improve. On March 22, 2017, Gillenwater received a "needs improvement" or "inconsistently demonstrates" in nine of the thirteen categories in his annual review. D. 57 ¶ 33; D. 58 at 145–50. On March 30, 2017, a territory operations manager conducted a walk-through of Gillenwater's department and observed that he was not following merchandise security and tagging processes and was issued a final warning in connection with his downward performance. D. 57 ¶ 34; D. 58 at 78, 152. From April through May 10, 2017, D'Agostino conducted additional walk-throughs of Gillenwater's department, and observed that Gillenwater fell below expectations in several areas including, stocking, customer service, store appearance and failure to follow company procedures. D. 57 ¶¶ 35–40; D. 58 at 154–71.

As a result of these matters, D'Agostino recommended that Home Depot terminate Gillenwater. D. 57 ¶ 41; D. 58 at 87. Home Depot's district and regional human resource departments approved the recommendation, and on May 12, 2017, Home Depot terminated Gillenwater. D. 57 ¶¶ 41-42; D. 58 at 87.

## IV.    Procedural History

Gillenwater commenced this action on February 18, 2020. D. 1. Home Depot moved to dismiss Gillenwater's complaint, D. 9, and the Court denied the motion, D. 18, and allowed

Gillenwater to file an amended complaint, D. 19.  Home Depot now moves for summary judgment,

D. 55.  The Court heard oral argument on the motion and took the matter under advisement.  D. 70.

## V.     Discussion

### A.     Time-Barred Claims

Home Depot asserts that any of Gillenwater's claims arising out of events that occurred

before August 11, 2016, are time-barred under Title VII and Chapter 151B.  D. 56 at 3–4.  "An

employee asserting claims in violation of Title VII and [Chapter] 151B must file charges with the

[Equal Opportunity Commission ("EEOC")] and [the Massachusetts Commission Against

Discrimination ("MCAD")], respectively, 'within 300 days after the alleged unlawful employment

practice occurred.'"  Krause v. UPS Supply Chain Solutions, Inc., No. 08-cv-10237-DPW, 2009

WL 3578601, at *6 (D. Mass. Oct. 28, 2009) (citing 42 U.S.C. § 2000e–5(e)(1) and Mass. Gen. L.

c. 151B § 5).  Gillenwater filed his complaint with the EEOC on June 7, 2017.  D. 56 at 3.

Accordingly, any claims arising out of events before August 11, 2016 are, as Home Depot

contends, time-barred.

Home Depot raised the statute of limitations as an affirmative defense to Gillenwater's

claims under Title VII and Chapter 151B in its answer, D. 23 at 2-3, and in its motion for summary

judgment, D. 56 at 3–4.  More specifically, Home Depot asserts that any allegedly discriminatory

actions by Shalkowski, a fellow ASM, in 2016 prior to August 11, 2016, are time barred.[1]  "Once

---

[1] In January 2016, Gillenwater reported to Kearney that Shalkowski targeted him by
highlighting his name on an attendance list to indicate that he arrived late to work and that he
believed she did not like him due to his race.  D. 57 ¶ 45; D. 58 at 53–54, 84–86.  Gillenwater,
however, testified that Shalkowski never made a race-based comment towards him in his presence.
D. 58 at 53.  Kearney conducted an investigation and Shalkowski denied harboring any racial bias
toward Gillenwater or highlighting his name on an attendance list, but she did admit to expressing
frustration about his work performance.  D. 57 ¶ 46; D. 58 at 84–86.  Kearney coached Shalkowski
to refrain from speaking negatively about her colleagues.  D. 57 ¶ 46; D. 58 at 85.  Shalkowski
transferred from store 2671 on February 6, 2017.  D. 57 ¶ 50; D. 58 at 86.  Through her

the defendant raises the statute of limitations as an affirmative defense and offers evidence to show that the action was brought more than 300 days from the date of the plaintiff's injury, the plaintiff bears the burden of proving facts that take the case outside the statute of limitations." Krause, 2009 WL 3578601, at *6 (citing Silvestris v. Tantasqua Reg'l Sch. Dist., 446 Mass. 756, 766–67 (2006)).

Gillenwater has failed to meet this burden that Shalkowski's conduct was timely. "Both federal and state law recognize the 'continuing violation doctrine' as an exception to the statute of limitations where '[a] party alleging employment discrimination may, in appropriate circumstances, file suit based on events that fall outside the applicable statute of limitation.'" Krause, 2009 WL 3578601, at *7 (quoting Tobin v. Liberty Mutual Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009)). "Under this doctrine, a plaintiff may recover for 'discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period.'" Id. (quoting Tobin, 553 F.3d at 130). "[E]ven if a discriminatory act is time-barred, both federal and Massachusetts law recognize that an employee is not barred 'from using the prior acts as background evidence in support of a timely claim.'" Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 112, 113 (2002)).

Accordingly, the Court will consider the facts as "background evidence," but "recognize[s] that only events occurring within the statute of limitations period are themselves actionable." Id. at 7.

---

investigation, Kearney located the employee who did highlight Gillenwater's name and coached the employee to refrain from such behavior. D. 57 ¶ 47; D. 58 at 85.

**B.    Title VII and Mass. Gen. L. c. 151B (Counts I and II)**

"In determining whether an employee's discrimination claim survives a motion for summary judgment, [the Court] appl[ies] the three stage, burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)."  See Yee v. Massachusetts State Police, 481 Mass. 290, 294 (2019) (citing Bulwer v. Mount Auburn Hosp., 473 Mass 672, 680–681 (2016)).  "Under the first stage of *McDonnell Douglas*, [Gillenwater] bears the burden of producing evidence of a prima facie case of discrimination."  Yee, 481 Mass at 294 (emphasis in original).  "A prima facie case for discrimination based on disparate treatment presents a four-part test:  (1) the plaintiff must be a member of a protected class; (2) [he] must be qualified for [his] job; (3) [he] must suffer an adverse employment action at the hands of [his] employer; and (4) there must be some evidence of a causal connection between [his] membership in a protected class and the adverse employment action, e.g., in the case of firing, that the position was filled by someone with similar qualifications."  Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70 (1st Cir. 2011) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)).

"Once the employee establishes a prima facie case, the burden shifts to the employer to establish a 'legitimate, non-discriminatory reason for its adverse employment action.'"  Krause, 2009 WL 3578601, at *8 (quoting Douglas v. J.C. Penney Co., 474 F.3d 10, 14 (1st Cir. 2007)).  "If the employer demonstrates such a reason, the burden returns to the employee to show that the proffered reason was mere pretext, and that the true reason was prohibited discrimination."  Douglas, 474 F.3d at 14 (citation omitted).  "Federal law and Massachusetts law diverge at this third stage."  Krause, 2009 WL 3578601, at *8.  "Under Title VII, the plaintiff must meet a 'pretext plus' requirement and show, in addition to pretext, that the true reason for the hiring decision was intentional discrimination."  Id. (quoting McDonnell v. Certified Eng'g & Testing Co., 899 F.

Supp. 739, 745–46 (D. Mass. 1995)).  "Chapter 151B is 'less stringent.'"  Id. (quoting Douglas, 474 F.3d at 14 n.2).  "Massachusetts is a 'pretext only jurisdiction' and requires the plaintiff to 'establish[ ] a prima facie case and persuade[ ] the trier of fact that the employer's articulated justification is not true but a pretext.'"  Id. (quoting McDonnell, 899 F. Supp. at 746).

Gillenwater fails to make a prima facie case that Home Depot discriminated against him on the basis of race.  First, as an African American male, Gillenwater is a member of protected class.  See D. 19 ¶ 2; 42 U.S.C. § 2000e-2.  Gillenwater, however, fails on the second element because he must state that "he was performing his job at a level that rules out the possibility that he was fired for job performance."  Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (citations omitted).

It is undisputed that leading up to Gillenwater's termination on May 12, 2017, Home Depot provided Gillenwater with several warnings that he was not adequately performing his job.  D. 57 ¶ 42; D. 60, 63 at 1.  At store 2671, Gillenwater's performance issues began in March 2015.  D. 57 ¶ 20; D. 58 at 101.  On March 12, 2015, Carter, Gillenwater's first store manager there, documented a coaching session for showing a lack of respect toward store associates.  D. 57 ¶ 20; D. 58 at 101.  In 2015, Gillenwater's store manager, D'Agostino, held three additional coaching sessions and a progressive disciplinary notice.  D. 57 ¶ 22; D. 58 at 103–06, 112–13.

In 2016, Gillenwater's performance did not improve.  Home Depot documented issues with his attendance as well as two customer complaints.  D. 57 ¶¶ 27–28; D. 58 at 77–78.  After further performance issues in 2017, Home Depot conducted an internal investigation of his performance, and issued Gillenwater an additional progressive disciplinary notice.  D. 57 ¶¶ 29–42; D. 58 at 130, 132–33, 135–140, 142–43.  Home Depot continued to counsel Gillenwater's underperformance after this additional disciplinary notice and issued him a final warning on March

30, 2017.  D. 57 ¶ 34; D. 58 at 152.  When Gillenwater failed to improve his job performance after this final warning, Home Depot terminated his employment on May 12, 2017.  D. 57 ¶ 42; D. 58 at 154–71.

As to the second element of his prima facie case, Gillenwater has not shown on this record that "he was performing his job at a level that rules out the possibility that he was fired for job performance."  Benoit, 331 F.3d at 173 (citation omitted).  Home Depot employees warned Gillenwater verbally and in writing several times over the course of three years that his job performance needed to improve.  See Holloway v. Thompson Island Outward Bound Educ. Ctr., Inc., 492 F. Supp. 2d 20, 24 (D. Mass. 2007) (concluding that plaintiff did not satisfy second element of prima facie case "[b]y being persistently tardy, failing to show up for work, and defying the instructions of his supervisors" in granting summary judgment for defendant).  As noted above, Gillenwater's responses to Home Depot's statement of undisputed facts does not comport with Rule 56 and Local Rule 56.1, but even so it does not dispute that he was repeatedly coached and counseled for inadequate job performance for several years during his employment.  See D. 65 at 4. Gillenwater, therefore, fails to meet the second element of his prima facie case under both Title VII and Chapter 151B.

Even assuming *arguendo* that Gillenwater had made a prima facie case, he has not rebutted Home Depot's non-discriminatory legitimate reason for his termination under federal or Massachusetts law.  Home Depot has articulated a legitimate, non-discriminatory business reason for Gillenwater's termination.  Home Depot has documented years of Gillenwater's deficient performance.  D. 57 ¶¶ 18–42; D. 58 at 90–171.  After many warnings, Gillenwater's performance did not improve.  Holloway, 492 F. Supp. 2d at 24–25.  This was the reason given for his termination, D. 57 ¶ 42; D. 58 at 80, 87, and it is a legitimate, non-discriminatory reason for same.

Federal law and Massachusetts law differ as to whether Gillenwater needs to show that such reason is merely pretext (for Chapter 15B purposes) or pretext for discrimination (for Title VII purposes).  Krause, 2009 WL 3578601, at *8.  Gillenwater does not provide any evidence to rebut Home Depot's legitimate non-discriminatory reason for his termination to meet either the federal "pretext plus" standard or the Massachusetts "pretext" standard.

To the extent that Gillenwater relies upon any allegedly racial remarks made by Home Depot employees, including a fellow ASM, Shalkowski,[2] who left Store 2671 on February 6, 2017, and Dennison, a district leader,[3] the undisputed record is that they were not involved in his termination.  D. 57 ¶¶ 41–42; D. 58 at 79–80, 87; see Melendez v. Autogermana, Inc., 622 F.3d 46, 54 (1st Cir. 2010) (stating that "stray workplace remarks . . . by non-decisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus") (internal citation and quotation marks omitted).  Gillenwater alleges that D'Agostino (who recommended his termination, D. 57 ¶ 41) unfairly targeted him due to his race for asking Gillenwater why he wears Timberland boots instead of Doc Martens.  D. 57 ¶ 53; D. 58 at 42–43.  Gillenwater, however, testified that he cannot recall when D'Agostino made the comment and he does not provide any basis, temporal or otherwise, for its causal connection with his termination.  D. 57 ¶ 53 (citing Gillenwater's deposition); D. 58 at 43; see Melendez, 622 F.3d at 54 (noting that "[w]hile evidence of age-related comments may be sufficient to support an inference of pretext and animus,  . . . [plaintiff] has failed to adduce sufficient evidence for a reasonable trier of fact to conclude that the remarks were

---

[2] See footnote 1, supra.

[3] Gillenwater testified that Dennison called him P. Diddy once and that he asked him how much the rims on his Mercedes cost.  D. 57 ¶ 54–55; D. 58 at 49–52.  Gillenwater believed that both of those comments had a negative racial undertone.  D. 58 at 48–49.

both temporally and causally connected to [defendant's] decision to discharge him"). Without more, D'Agostino's statement, is insufficient to carry Gillenwater's burden to show pretext or pretext for discrimination.  See Douglas, 474 F.3d at 15; see also Jacquet v. City of Somerville, No. 18-10167-GAO, 2020 WL 3545535, at *3 (D. Mass. June 30, 2020) (quoting Barry v. Moran, 661 F.3d 696, 707 (1st Cir. 2011)).

A plaintiff must also show that an employer's reasons for its actions were pretextual by demonstrating that "similarly-situated employees outside of his protected class were treated differently." Windross v. Barton Protective Services, Inc., 586 F.3d 98, 104 (1st Cir. 2009) (citing Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129–30 (1997)).  Gillenwater, however, also fails to make this showing because he "must identify and relate specific instances where persons similarly situated in all relevant respects were treated differently" and "identify other employees to whom he is similarly situated 'in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations.'" Matthews, 426 Mass. at 129–30 (adopting the approach taken by federal courts under Title VII) (internal citations omitted).  "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Molloy v. Blanchard, 115 F.3d 86, 91 (1st Cir. 1997) (citation and internal quotation marks omitted); see Dusel v. Factory Mutual Ins. Co., 52 F.4th 495, 507 (1st Cir. 2022).  Gillenwater cites Home Depot's disciplinary action for D'Agostino, D. 61-1 at 74–85, and his fellow ASMs, Shalkowski, D. 61-1 at 117–119, Mohan Wallace, D. 61-1. at 95–115, James Croeber, D. 61-1 at 120–134, and Edmund Joseph, D. 61-1 at 86–94.  Gillenwater argues that despite their disciplinary records, they were not terminated, but he fails to state how his colleague's job performance records are "roughly equivalent" to his record.  Home Depot has a range of disciplinary action, including

14

"coaching, counseling, final warning, and termination." D. 57 ¶ 4; D. 58 at 62. Home Depot also allows managers to skip steps based on the nature of the misconduct. D. 57 ¶ 4; D. 58 at 62. Since Gillenwater does not provide a factual basis, disputed or otherwise, to show how his colleague's disciplinary records are similar to his, he fails to show that Home Depot's reasons for terminating him were pretextual by demonstrating that similarly situated employees outside of his protected class were treated differently. See Dusel, 52 F.4ᵗʰ at 508 (affirming summary judgment to defendant where "there was no triable issue of fact" as to whether defendant's proffered reason was not the "real reason, but [was] a pretext for discrimination").

For all of these reasons, Gillenwater fails to state a claim for discrimination on the basis of race under Title VII and Chapter 151B.

### C.      Age Discrimination (Count III)

Gillenwater's age discrimination claim under the ADEA also fails.   This claim is also "governed . . . by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 802–04." Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991) (citations omitted). "The plaintiff must initially make a prima facie showing of discrimination." Id. (citing McDonnell Douglas Corp., 411 U.S. at 802) (citation omitted). To establish a prima facie age discrimination claim, a plaintiff must show "(i) [he] was over the age of forty, (ii) his work was sufficient to meet his employer's legitimate expectations, (iii) his employer took adverse action against him, and (iv) the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." Id. (citations omitted). "This showing gives rise to an inference that the employer discriminated due to the plaintiff's advanced years." Id. (citation omitted).

"The next burden—articulating a legitimate, nondiscriminatory reason for the adverse employment decision—belongs to the defendant." Id. (citations omitted).  "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Id. (citations omitted).  "Once such a reason emerges, the inference raised by the prima facie case dissolves . . . and the last transfer of burden occurs." Id. (citations omitted).

"At the final stage, the plaintiff is required to show, unassisted by the original inference of discrimination, that the employer's proffered reason is actually a pretext for discrimination of the type alleged." Id. (citing Furnco Constr. Corp. v. Waters, 438 U.S. 567, 578 (1978)) (citations omitted).  "In assessing pretext, a court's 'focus must be on the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible." Id. at 824 (quoting Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)).  "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive:  age discrimination." Id. (citations and quotation marks omitted).

Gillenwater fails to make a prima facie showing of age discrimination under the ADEA.  At the time of his termination, on May 12, 2017, Gillenwater was in the protected age group.  D. 56 at 25; see D. 19.  Gillenwater, however, as discussed above did not present any evidence that he met Home Depot's legitimate performance expectations.  See Ho v. Abbott Labs., Inc., 618 Fed. Appx. 852, 854 (7th Cir. 2015) (granting motion for summary judgment on ADEA claim where plaintiff "presented no evidence" to show that she met employer defendant's legitimate expectations).  As noted, Home Depot documented Gillenwater's history of consistent

underperformance, which was the stated reason for his termination.  D. 57 ¶¶ 18–42; D. 58 at 90–171.

Even if Gillenwater had met a prima facie case of age discrimination, he also has failed to rebut Home Depot's legitimate, nondiscriminatory business reason that his job performance was not sufficient to meet Home Depot's legitimate performance expectations.  See LeBlanc v. Great American Ins. Co., 6 F.3d 836, 845 (1st Cir. 1993).  Home Depot also argues that Gillenwater has failed to identify any evidence that supports age was a motivating factor in his termination.  D. 56 at 24.  As evidence of animus, Gillenwater relies upon his testimony that Deveno, the regional vice president, said, "I've never seen you with gray hair on your chin.  Is Paul running you ragged?" or words to that effect.  D. 57 ¶ 56; D. 58 at 47.  Gillenwater also testified that D'Agostino "would sometimes say, what's the matter; you can't keep up with these young guys" or words to that effect.  D. 57 ¶ 57; D. 58 at 55.

"Although statements directly related to the challenged employment action may be highly probative in the pretext inquiry, mere generalized stray remarks, arguably probative of bias against a protected class, normally are not probative of pretext absent some discernable evidentiary basis for assessing their temporal and contextual relevance."  Ortiz-Rivera v. Astra Zeneca LP, 363 Fed. Appx. 45, 47–48 (1st Cir. 2010) (citation and internal quotation marks omitted)).  Gillenwater failed to provide any temporal or contextual basis for Deveno's or D'Agostino's comments.  Gillenwater did not testify as to when either of these comments occurred.  See D. 57 ¶ 56; D. 58 at 47; D. 57 ¶ 57; D. 58 at 55.  Gillenwater also failed to provide any evidence as to how Deveno's or D'Agostino's comments are relevant to his termination, particularly in the context of his disciplinary record.  See D. 58 at 90–171.  Without any temporal or contextual relevance, Gillenwater has failed to rebut Home Depot's legitimate, nondiscriminatory business reason that

his job performance was not sufficient to meet Home Depot's legitimate performance expectations. See Mesnick, 950 F.2d at 824–25.

### D.   **Hostile Work Environment**

For the first time in his opposition to Home Depot's summary judgment motion, Gillenwater also raises a hostile work environment claim under Title VII and Chapter 151B.  D. 61 ¶ 7; D. 68.  See Kunelius v. Town of Stow, 588 F.3d 1, 19 (1st Cir. 2009) (stating that "[i]n federal court, when a plaintiff raises a claim for the first time in response to a summary judgment motion, it is possible to treat the claim as a motion to amend the complaint under [Fed. R. Civ. P.] 15(a)" although affirming denial of same where plaintiff "made no such argument to the district court" and did not advance one on appeal) (citation omitted).

Home Depot argues that the Court should not consider Gillenwater's hostile work environment claim because he did not raise it in his administrative charge, and therefore failed to exhaust his administrative remedies.  D. 65 at 7–11.  "Both Title VII and Chapter 151B require an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (citing 42 U.S.C. § 2000e–5(e)(1); Mass Gen. L. c. 151B, §§ 5–9).  "The purpose of that requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Lattimore, 99 F.3d at 464 (citations omitted).  "That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Id.  "Consequently, we have stated that, in employment discrimination cases, the scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Id. (citations and internal quotation marks omitted).

"In cases where, as here, the employee acts *pro se*, the administrative charge is liberally construed in order to afford the complainant the benefit of any reasonable doubt."  Id. (emphasis in original) (citations and internal quotation marks omitted).  Accordingly, "[t]he scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge."  Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990) (citations omitted).  Gillenwater filed race and age discrimination claims with the EEOC and the MCAD based on allegations that fellow ASM, Shalkowski, and his superiors, D'Agostino, Kearney, Dennison and Deveno were making discriminatory comments to him in the workplace.  See D. 19; D. 56 at 3–4; Lattimore, 99F.3d at 465 (stating that plaintiff's hostile work environment claim could not reasonably be expected to grow out of his employment discrimination claim because his administrative charge "makes no mention of" the person that allegedly harassed plaintiff "or any incidents of harassment").  Here, Gillenwater appears to rely upon the same facts that form the basis of his discrimination claim to support his hostile work environment claim.  See, e.g., D. 61 ¶ 7; D. 62 at 1 (stating that Home Depot created a hostile work environment for "insults, slurs, name calling (P'Diddy)").  See Lattimore, 99 F.3d at 464; Powers, 915 F.2d at 38–39.

Even assuming that this belatedly raised claim is properly before the Court, Home Depot is entitled to summary judgment on the merits of same.  "A hostile work environment exists in violation of Title VII 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Ugurhan Akturk Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "To establish a hostile work environment, [Gillenwater] is required to show that his work environment was so pervaded by racial harassment as to alter the terms and conditions of his employment."

Garmon v. Amtrack, 844 F.3d 307, 317 (1st Cir. 2016) (citation and internal quotation marks omitted). "To sustain a claim of hostile work environment, [Gillenwater] must demonstrate that 'the harassment was sufficiently severe or pervasive so as to alter the conditions of [his] employment and create an abusive work environment' and that the '[racially] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and [that Gillenwater] in fact did perceive it to be so.'" Thompson v. Coca-Cola Co., 522 F.3d 168, 179 (1st Cir. 2008) (quoting Douglas, 474 F.3d at 15).

Under Chapter 151B, "[a] hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.'" Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 532 (2001) (quoting College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, 400 Mass. 156, 162 (1987)); see Rosemond v. Stop & Shop Supermarket Co., 456 F. Supp. 2d 204, 212 (D. Mass. 2006) (stating that the basic framework for Title VII "applies to Chapter 151B hostile environment claims") (citation omitted); see also Tousst v. Brigham & Women's Hosp., 166 F. Supp. 3d 110, 115 (D. Mass. 2015) (stating that "[u]nder both Title VII and Chapter 151B, to survive summary judgment, [Gillenwater] must show that he was subject to 'offensive, race-based conduct that is severe or pervasive enough' that it altered the conditions of his employment") (quoting Landrau-Romero v. Banco Popular De P.R., 212 F.3d 607, 613 (1st Cir. 2000)) (citation omitted).

Although "[t]here is no mathematically precise test to determine whether [Gillenwater] presented sufficient evidence that he was subjected to a hostile work environment," the Court must look at "all the circumstances, including the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with

[plaintiff's] work performance." Kosereis, 331 F.3d at 216 (citation and internal quotation marks omitted); see 15 LaGrange Street Corp. v. Mass. Comm'n Against Discrimination, 99 Mass. App. Ct. 563, 572 (2021).

The sum total of Gillenwater's hostile work environment claim is that "[Home Depot] created a hostile environment by being:  1. pervasive, severe and persistent; 2. disruptive to victims at work; 3. something the employer knew about and did not address adequately enough to make it stop; 4. insults, slurs, name calling (P'Diddy) 5.  intimidation, ridicule, mockery 6. Brenda walking me saying "What's up" Like it is a joke . . . mocking me."  D. 62 at 1.  Gillenwater has failed to establish the rest of the hostile work environment claim elements.  Even considering Gillenwater's contentions and the totality of the record, D. 57 ¶ 53; D. 58 at 42–43;  D. 57 ¶ 54–55; D. 58 at 49–52, Gillenwater has not presented evidence of severe and pervasive conduct required for a hostile work environment claim.  See Kosereis, 331 F.3d at 216; Garmon, 844 F.3d at 318; see, e.g., Smith v. Clay Chevrolet, Inc., No. 14-14027-MLW, 2016 WL 8138606, at *12 (D. Mass. Nov. 17, 2016) (granting defendant's motion for summary judgment where plaintiff's raced-based hostile work environment claim was not remotely sufficient to meet the 'severe and pervasive' standard where she relied upon two allegedly race-based comments over the course of her employment for less than two years).  This record "is insufficient to create a material issue of fact or merit trial." Garmon, 844 F.3d at 318 (citing Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013)).

Accordingly, Gillenwater fails to state a hostile work environment claim under Title VII or Chapter 151B.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Home Depot's motion for summary judgment.  D. 55.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge